## A09A0096. CLYDE v. THE STATE.
### (680 SE2d 146)

SMITH, Presiding Judge.

A jury found Rodney Clyde guilty on one count each of trafficking in cocaine and possession of marijuana with intent to distribute, and two counts of possession of a firearm during the commission of a felony. Following the denial of his amended motion for new trial, Clyde appeals, asserting as error the denial of his motion for a directed verdict based on the sufficiency of the evidence. We find the evidence sufficient to support Clyde's convictions for trafficking and possession with intent to distribute, but insufficient to support his convictions for possession of a firearm during the commission of a felony. We therefore reverse those convictions.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [the defendant] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The standard for reviewing a denial of a motion for a directed verdict of acquittal is whether under the rule of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. Moreover, the test established in *Jackson* is the proper test for us to use when the sufficiency of the evidence is challenged, whether the challenge arises from the overruling of a motion for directed verdict or the overruling of a motion for new trial based upon alleged insufficiency of the evidence.

(Citations and punctuation omitted.) *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

So viewed, the evidence revealed that after a confidential informant bought drugs at a house, officers obtained a search warrant and returned to the residence. As officers drove up to the house at about 1:00 p.m., they noticed Clyde standing in the front yard. When Clyde noticed the officers, he quickly walked away and around the side of an adjacent residence. Inside the house identified in the warrant, officers found plastic baggies, digital scales, postal scales, weapon ammunition, and marijuana packaged in individual small bags.

In the back yard of the house, officers found a .12-gauge sawed-off shotgun wrapped in plastic and buried under some cinder block bricks. These cinder blocks were located 30 feet away from the

back of the house and "[t]here was nothing around them." They also found a canister containing crack cocaine buried under a small red brick next to a grill in the back yard. In a wooded area behind and to the side of the house, officers found three and a half "cookies" of crack cocaine weighing a total of 55 grams, and 97 grams of marijuana in a sandwich bag covered with a piece of paper. The officers had to climb over a fence to retrieve these items. An officer testified that persons dealing drugs do not "leave that amount of drugs unattended." When officers searched Clyde's person, they found $400 in small denominations in his pocket. An officer testified that "[m]ost folks that buy drugs and most folks who sell drugs use lower denomination bills. Usually crack rocks are ten to twenty dollars and those are the denomination bills they normally bring."

Before executing the search warrant, officers conducted surveillance and noticed Clyde often coming and going through the back door of the house. One of the officers testified that while serving a search warrant a few months earlier, they found Clyde at the residence in bed asleep with a woman. The owner of the house testified that it was constantly vandalized and that he often had to call police to have people removed from his property. The owner testified further that Clyde did not have a key to his house, that he nevertheless allowed Clyde to use the house on several occasions, and that he did so to keep people from "tearing things up." He acknowledged that on one occasion, he allowed Clyde to come into the house with a "lady friend."

1. Clyde argues that the evidence was insufficient to support his conviction for trafficking in cocaine and possession of marijuana with intent to distribute. He argues only that he was merely present at the scene and that others had equal access to the contraband.

"Mere presence, without proof of participation, is insufficient to support a conviction." (Citation omitted.) *Sherrer v. State*, 289 Ga. App. 156, 159 (2) (656 SE2d 258) (2008). The State must show that the defendant had the power and intent to exercise control over the contraband. Id.

> [E]vidence merely showing that contraband was found in the residence occupied by the defendant is insufficient to support a conviction if it affirmatively appears from the evidence that other persons had equal access to the contraband and therefore an equal opportunity to commit the offense. . . . Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is *primarily a question for determination by the jury.*

(Citations and punctuation omitted; emphasis in original.) *Howard v. State*, 291 Ga. App. 386, 388 (662 SE2d 203) (2008). The evidence here showed that although others may have been present on the property on various unspecified occasions, Clyde was allowed by the owner to use the house, had been seen at the residence by police on previous occasions, had his vehicle on the premises, and hurriedly walked away from officers when they arrived. The evidence also showed that no other persons were present when officers executed the search warrant.

This evidence, although circumstantial, was sufficient to connect Clyde to the house where the contraband was found. See *Wilson v. State*, 256 Ga. App. 741, 742-743 (1) (569 SE2d 640) (2002) (evidence other than mere presence and equal access linked defendant to drugs found outside his home along muddy trail and defendant wore muddy boots and had muddy tires on four-wheeler); *Sherrer*, supra, 289 Ga. App. at 160 (2) (evidence sufficient to connect defendant to premises where he was attempting to put out methamphetamine lab fire at home and hid when police arrived); compare *Brown v. State*, 285 Ga. App. 330, 332 (646 SE2d 273) (2007) (evidence insufficient where defendant was in front yard and drugs were found inside house that defendant did not lease, own or occupy).

The evidence was therefore sufficient to support a finding of guilt for trafficking in cocaine and possession of marijuana with intent to distribute. See *Ely v. State*, 241 Ga. App. 896, 898-899 (528 SE2d 532) (2000); OCGA §§ 16-13-31 (a) (trafficking in cocaine), 16-13-30 (j) (1) (possession of marijuana with intent to distribute).

2. Clyde argues that there was insufficient evidence to support a finding that he possessed a firearm during the commission of a felony. We agree.

Clyde was charged with two counts of violating OCGA § 16-11-106 (b) (5). That Code section provides that the offense of possession of a firearm during the commission of a crime occurs when any person has "on or within arm's reach of his or her person a firearm" during the commission of certain drug-related crimes. OCGA § 16-11-106 (b) (5).

The evidence here showed that Clyde did not have the firearm on his person. And no evidence was presented from which the jury could conclude that the firearm was within his arm's reach during the commission of the crimes. The firearm was wrapped in plastic and buried under cinder blocks in the back yard of the home with nothing around it. No evidence was presented as to the size of the back yard or the distance between the firearm and the drugs. An officer testified that a person could control the cocaine and marijuana across the fence and the cocaine found near the grill "with that shotgun in the backyard." But Clyde's conviction cannot be sus-

tained unless there was evidence that he had immediate access to the weapon while possessing marijuana and trafficking in cocaine, which in this case was alleged to be the possession of more than 28 grams. See *Carswell v. State*, 251 Ga. App. 733, 734-736 (1) (b) (555 SE2d 124) (2001) (evidence insufficient where defendant had cocaine on his person outside motel but weapon was in suitcase later found in defendant's motel room); compare *Gibson v. State*, 223 Ga. App. 103 (1) (476 SE2d 863) (1996) (where drugs were on coffee table and weapon under sofa in small residence, evidence sufficient to establish that defendant passed momentarily within arm's reach of gun).

Here, there is no evidence that Clyde had the firearm on his person or within his arm's reach as required by OCGA § 16-11-106 (b).* Because insufficient evidence supports Clyde's convictions for possession of a firearm during the commission of a crime, we must reverse those convictions.

*Judgment affirmed in part and reversed in part. Phipps and Bernes, JJ., concur.*

DECIDED JUNE 10, 2009.

*Brandon A. Bullard, William M. Ermine*, for appellant.
*Howard Z. Simms, District Attorney*, for appellee.

---

* We note that the indictment charged Clyde under OCGA § 16-11-106 (b) (5), possession of a firearm during the commission of trafficking, for both the trafficking charge and the possession with intent to distribute charge. The crime of possession of a firearm while possessing drugs with intent to distribute is found under OCGA § 16-11-106 (b) (4). Any error here is now moot, however, in light of our reversal of Clyde's convictions on those counts.